FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 15, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH H.,[1] | No.   1:24-cv-3138-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| LELAND DUDEK, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek recently became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as Defendant.

Plaintiff Sarah H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work due to degenerative disc disease, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), attention-deficit hyperactivity disorder (ADHD), and diverticulitis. Because the ALJ's evaluation of the medical opinions pertaining to Plaintiff's degenerative disease is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

Claiming an inability to work due in part to lumbar radiculopathy, panic attacks, depression, PTSD, and diverticulitis, Plaintiff applied for benefits under Titles 2 and 16, with an alleged onset date of January 14, 2021.[3]

After the agency denied benefits at the initial and reconsideration stages,[4] ALJ Laura Valente held a telephone hearing in July 2023, at

---

[3] AR 298-299, 300-306.

[4] AR 147-151, 152-156, 159-163, 164-166.

which Plaintiff and a vocational expert testified.[5] Plaintiff testified that she last worked at FedEx in Florida as a package handler but could not make it through a four-hour shift, even with the use of an ankle brace, knee brace, and back brace.[6] She had previously worked at a call center and could not do that because she could not interact with others.[7] She said she started the job on January 14, 2021, and had resigned by the end of January because if she worked for 1 day she would not be able to work for the next 2 or 3 days due to pain.[8] She said she had to call out frequently and her supervisors were upset with her.[9] Prior to that job, she had worked for 3 months as a call center representative in a mail order pharmacy.[10] Prior to the call center, she worked for a school district for about 5 years as a reading teacher and left that job because

_____

[5] AR 56-90.

[6] AR 61-62.

[7] AR 62.

[8] *Id.*

[9] AR 63.

[10] *Id.*

she had panic attacks after a trauma in 2017 and had frequent absences.[11] She also had worked in a bookstore as a seasonal helper, in a video game store, and as a sales associate at Costco.[12]

Plaintiff testified that she left FedEx because of both physical and mental impairments and was taking medication when working there.[13] She said the fact that she was so physically limited gave her panic attacks.[14] Plaintiff said she was on Meloxicam for her arthritis and sertraline for her depression and anxiety as well as an antiviral.[15] She said that she moved and her new primary care provider changed her medications and her anxiety and depression have improved but she still cannot handle being in crowds.[16] She said that in her FedEx job she could not take breaks and that her spine specialist had advised her

─────────────────

[11] AR 63-64.

[12] AR 64-65.

[13] AR 65.

[14] *Id.*

[15] AR 65-66.

[16] AR 66.

to shift position every 15 to 20 minutes to relax her back and avoid pain.[17] She said the pain was in her lower back and neck because there were herniated discs in those areas.

Plaintiff said her spine specialist wanted to do an MRI because she suspected fibromyalgia in addition to the spinal injuries.[18] She said that she had to go to physical therapy before an MRI could be authorized by insurance and that with her hernia she did not know if she could complete physical therapy.[19] Plaintiff said that her doctor told her he would fix the hernia when he reversed her ostomy.[20] Plaintiff said that in February 2023 she had extreme pain and went to the ER, where it was determined that she had an acute diverticulitis flare that caused infection and had caused an abscessed hole in her colon.[21] She said they did a full ostomy surgery and removed her

---

[17] AR 67.

[18] *Id.*

[19] AR 68.

[20] *Id.*

[21] *Id.*

appendix.[22] Plaintiff said that doctors told her there was a chance the ostomy might by permanent but she had an appointment the next month to find out if it could be.[23]

Plaintiff testified that her PTSD, major depressive disorder, and anxiety will aggravate each other and causes flares.[24] She said she has a flare-up of her PTSD at least once a month.[25] She said that sometimes the flare-ups last only 2 to 3 days but other times they can last for weeks.[26] She said that in the 2 weeks she was working at FedEx she called out on 3 days due to either the PTSD or her pain.[27] Plaintiff said she lived with her mother and her 2 children and that her family helps her with her children.[28] Plaintiff said that her mother is

_____

[22] AR 68-69.

[23] AR 68-69.

[24] AR 69.

[25] *Id*.

[26] AR 70.

[27] *Id*.

[28] AR 70-71.

retired and that she herself is only able to do minimal housework because bending is very painful.[29] She said she had not enrolled in any vocational training.[30]

Plaintiff testified that in March 2017 her then-husband tried to kill her and that since then she will frequently get into fights if she feels threatened.[31] She said that when she worked for the online pharmacy she would call out 3 times in a month.[32] She said that when she worked at FedEx she would go to the bathroom frequently to collect herself and calm down.[33] She said that when she is anxious she gets forgetful.[34] She said she has to shop online because she will forget

---

[29] AR 71.

[30] *Id.*

[31] AR 72-73.

[32] AR 74.

[33] AR 75.

[34] *Id.*

things if she goes to the store.[35] Plaintiff said she can sit, stand, or walk for about 20 minutes without pain due to arthritis.[36]

Plaintiff said she takes Meloxicam, Klonopin, Lamictal, Trintellix, Mobic, and Zoloft.[37] She said the mental health medications make her feel better but not functional.[38] Plaintiff said that she has to change her ostomy bag and that how long it lasts before leaking varies.[39] She said she has to use a cream because the area gets infected.[40] She said that she is paranoid because the bag smells at times even when it is not leaking.[41]

---

[35] AR 75-76.

[36] AR 77.

[37] AR 78-79.

[38] AR 79.

[39] AR 80.

[40] *Id.*

[41] *Id.*

The ALJ issued a decision denying benefits.[42] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and her activities.[43] As to the medical opinions, the ALJ found:

- The reviewing opinion of Lewis Weaver, MD, and Howard Platter, MD, persuasive.

- The reviewing opinions of Leslie Postovoit, PhD, and Steven Haney, PhD, to be somewhat persuasive.

- The examining opinions of Joel Mitchell, PhD, and Marquetta Washington, ARNP, to be not persuasive.[44]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.

- Step one: Plaintiff has not engaged in substantial gainful activity since January 14, 2021, the alleged onset date.

---

[42] AR 33-55. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[43] AR 41-45.

[44] AR 45–47.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease, depressive disorder, and anxiety disorder.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff has the RFC to perform less than the full range of light work in that she can sit, stand, and walk for six hours each; she can never climb ladders, ropes, or scaffolds; she can frequently crawl, crouch, kneel, stoop, balance, and climb ramps and stairs; she must avoid even moderate exposure to hazards such as unprotected heights; and she will need one additional break of ten minutes per workday.

- Step four: Plaintiff was capable of performing past relevant work as a customer service representative, tutor, and schoolteacher.

- Step five: in the alternative, Plaintiff is capable of performing work as an office helper and housekeeper.[45]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council.[46] Plaintiff timely requested that this Court review the denial of disability.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[47] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

------------------------------------

[45] AR 38–48.

[46] AR 295, 1–6.

[47] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[48]

## III.   Analysis

Plaintiff argues the ALJ erred when evaluating the opinions of consultative examiners ARNP Washington and Dr. Mitchell; erred in dismissing Plaintiff's diverticulitis as nonsevere and in not considering Plaintiff's PTSD and ADHD at ground two; erred in rejecting Plaintiff's subjective complaints; and erred at step four and step five.[49] The Commissioner argues the ALJ's findings regarding the medical opinion

---

[48] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[49] ECF No. 11.

evidence and Plaintiff's subjective claims are supported by substantial evidence, that any error at step two was harmless, and that Plaintiff's claims of error at steps four and five are dependent on prevailing in her prior claims.[50] As is explained below, the ALJ erred when evaluating the medical opinions; on remand, the ALJ is to reevaluate the medical opinions and testimony, develop the record as needed, and properly consider Plaintiff's combined impairments.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency of ARNP Washington's opinions and failed to give Dr. Mitchell's opinions due consideration because she referred to him as Mr. Mitchell rather than Dr. Mitchell.  The Commissioner argues the ALJ reasonably articulated her reasoning as to the supportability and consistency of ARNP Washington's opinions and that although the ALJ referred to Dr. Mitchell as Mr. Mitchell several times she also stated that he held a PhD.  After considering

---

[50] ECF No. 16.

each of the medical opinions and the reasons for their issuance, the Court determines the ALJ's overall evaluation of the medical opinions is not supported by substantial evidence.

### 1. Standard

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[51] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[52] Supportability and consistency are the most important factors.[53] When considering the ALJ's findings, the Court is

---

[51] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[52] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[53] *Id.* §§ 404.1520c, 416.920c(b)(2).

constrained to the reasons and supporting explanation offered by the ALJ.[54]

> The regulations define these two required factors as follows:
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[55]

### 2.    <u>ARNP Washington's Opinion</u>

On November 12, 2021, Plaintiff was examined by Marquetta Washington, ARNP, at the request of the Commissioner.[56] Plaintiff's chief complaints were degenerative disc disorder, herniated disc, depression, and anxiety.[57] ARNP Washington said that she reviewed

---

[54] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[55] 20 C.F.R. §§ 404.1520c(1)-(2), 416.920c(c)(1)–(2).

[56] AR 659-667.

[57] AR 659.

an August 4, 2021 treatment note from Dr. Wenger, Jr. and an August 27, 2021, treatment note of Dr. O'Conner, both of Prosser Clinic, as well as a March 6, 2018 X-Ray of the cervical and lumbar spine.[58] ARNP Washington noted that Plaintiff had history of a degenerative disc disorder and herniated disc, and that standing for prolonged periods and lifting triggered symptoms and noted that Plaintiff was presently taking Meloxicam, acyclovir, sertraline, and Trintellix.[59]  She listed Plaintiff's past medical and surgical history as arthritis in both ankles, endometriosis, cholecystectomy, and ganglion cyst, right hand.[60] Plaintiff reported that she could perform self-care, that she could climb stairs using a handrail, that she could cook and wash dishes 2-3 days a week but family helps the other days, that she can drive and pick up pre-ordered grocery items, that she can manage her finances, that she plays board games with family weekly, and that her

---

[58] *Id*.

[59] AR 659-660.

[60] AR 660.

cousin does her yard work.[61] Plaintiff reported occasional headaches, intermittent tinnitus, and depression and anxiety.[62]

On examination, Plaintiff was oriented, walked without difficulty, could rise and sit from a chair without assistance, could make a fist and touch her thumb to each finger, was able to pick up a coin, button and unbutton and zip and unzip without difficulty.[63] Plaintiff's skin, HEENT, neck, hest/lungs, cardiovascular, abdomen, and vascular systems were normal.[64] Plaintiff had a negative Tinel's and Phalen's test but had flat feet bilaterally.[65] Plaintiff's gait and station were stable, she had negative Romberg, she had difficulty tandem walking and hopping, she was not able to walk on her toes due to ankle pain, she could walk on heels, she could stand on either foot, she could squat

---

[61] AR 660-661.

[62] AR 661.

[63] AR 661-662.

[64] AR 662.

[65] AR 662.

and she could remove and put on her shoes.[66] Plaintiff had normal grip in her hands and normal muscle tone in all extremities.[67] Plaintiff's Waddell test was negative and she had sharp pain bilaterally with straight leg raise in supine position at 70 degrees.[68] Plaintiff had grossly intact sensation in the upper and lower extremities and pain on palpation in the lower back.[69]

ARNP Washington diagnosed Plaintiff with bilateral flat foot, decreased lumbar flexion, radiculopathy, degenerative disc disease, low back pain, poor balance, and morbid obesity, and opined that all would last 12 months or more.[70] She also diagnosed Plaintiff with low vision improved with prescription glasses.[71] ARNP Washington opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] AR 664.

[71] *Id.*

frequently due to decreased lumbar ROM and back pain; had no limitations in sitting; and could stand and/or walk for 6 hours in an eight-hour day but would need to alternate between sitting and standing every 30 minutes due to radiculopathy and low back pain.[72] She opined that Plaintiff had no limitation in stooping, fine motor skills, overhead or forward reaching, no limitation in hearing and speech, and would need to wear glasses at all times due to low vision.[73] ARNP Washington opined that due to decreased lumbar ROM, radiculopathy, and low back pain, Plaintiff would be limited to occasionally performing the following: bending, crawling, kneeling, and crouching.[74] She opined that Plaintiff can never balance due to decreased lumbar ROM, radiculopathy, and low back pain.[75]  ARNP Washington opined that Plaintiff could not work at heights due to decreased lumbar ROM, radiculopathy, and low back pain, and had no

---

[72] *Id.*

[73] AR 664-665.

[74] *Id.*

[75] AR 665.

limitation in the following: traveling in a car or public transport, or

working around heavy machinery, extremes of temperature,

dust/gas/fumes, noise, or vibration.[76]

The ALJ found the opinion of ARNP Washington to be not

persuasive.  She articulated her reasoning as follows:

> The undersigned does not find the opinion of Ms.
> Washington persuasive. While Ms. Washington had an
> opportunity to examine the claimant, she did not have an
> opportunity to review the updated record. Moreover, her
> opinion that the claimant must alternate between standing,
> sitting, and walking every thirty minutes is out of
> proportion to the longitudinal record to include, for
> example, the largely normal findings on physical
> examination showing normal neurological functioning with
> a normal gait, normal extremities with full movement and
> full strength, and normal cardiovascular and respiratory
> functioning; imaging showing no more than moderate
> degenerative changes; and the claimant's benign
> presentation. The undersigned also notes that Ms.
> Washington's opinion is not corroborated by her own
> findings on examination that while the claimant had a
> reduced range of motion in her back with positive straight
> leg raises and pain to palpation that she was also able to
> walk, sit, and rise without assistance; that she had no
> manipulative deficits with negative Phalen and Tinel
> findings; that she had full grip and muscle strength in her
> upper and lower extremities with normal bulk and tone and
> a normal range of motion; and that she had normal

---

[76] AR 666.

neurological functioning (see e.g. 1F; 5F4, 8; 6F12; 8F; 9F9, 19-20; 11F20; 17F3; finding #5).[77]

Plaintiff argues that the ALJ erred in both her assessment of the supportability factor and the consistency factor. The Court agrees. The ALJ articulated that ARNP Washington's opinion was not supported by her examination findings, but initially the Court notes that a review of the supportability factor is not limited to the examination findings. The supportability factor is an evaluation of how well the medical provider explained the basis for their opinion, including their review of prior and current imaging studies.[78]

ARNP Washington explained that the basis for the opined limitations in walking, sitting, and standing was a result of radiculopathy and low back pain.[79] She also explained that in addition to her examination of Plaintiff she based her opinions on

---

[77] AR 47.

[78] 20 C.F.R. §§ 404.1520c(1)-(2), 416.920c(c)(1)–(2).

[79] AR 664.

a review of an August 4, 2021 treatment note from Dr. Wenger, Jr. and an August 27, 2021 treatment note of Dr. O'Conner, as well as a March 6, 2018 X-Ray of the cervical and lumbar spine.[80]

It is of note that ARNP Washington cited to the August 4, 2021 treatment notes of Plaintiff's appointment with Dr. Wenger. On August 4, 2021, Plaintiff presented to Robert Wenger, Jr, DO, with abdominal pain, malaise, and nausea.[81]  On examination, there was mild left lower quadrant and left upper quadrant tenderness.[82] A CBC blood test and urinalysis were abnormal and a CT of the abdomen and pelvis indicated a fatty liver, cholecystectomy, enlarged spleen, mild colonic wall thickening suspicious for colitis.[83] The CT scan also stated that there were "prominent degenerative changes in the spine," bilateral degenerative joint disease of the hip, and that there was

---

[80] *Id.*

[81] AR 627.

[82] AR 628.

[83] AR 629.

DISPOSITIVE ORDER - 22

suspicion of bilateral femoral acetabular impingement.[84]  A finding that Plaintiff had "prominent degenerative changes in the spine" is contrary to the ALJ's finding that the imaging showed only moderate changes.

In their briefs, the parties have also argued regarding the relevancy of a positive straight leg raising test, with Plaintiff arguing that a straight leg raising test is a test designed to test for radiculopathy.  The Commissioner is correct that in her brief Plaintiff cited no treatise in support of her claim regarding the significance of a straight leg raising test.  Plaintiff's statement is correct, nonetheless.  A straight leg raise test (also known as a Laseque sign) is defined as "a clinical test to assess nerve root irritation in the lumbosacral area."[85]  Plaintiff is correct that the

---

[84] *Id.*

[85] *Straight Leg Raise Test (Lasegue sign)* - StatPearls – National Institute of Health, National Library of Medicine (last viewed April 11, 2025).

positive test is an objective clinical test supporting ARNP Washington's diagnosis of radiculopathy.

The Commissioner also argued that no MRI or other imaging existed supporting ARNP Washington's diagnosis. This is incorrect as the 2021 CT scan discussed above indicated "prominent degenerative changes" and as far back as 2018, an MRI was performed which indicated disc space desiccation at L3 to S1; disc bulging at L3-4; posterior osteophyte at L4-5; disc bulging at L4-5 with bilateral moderate neuroforaminal narrowing, and disc bulging at L5-S1.[86] There is a significance that there was neuroforaminal narrowing because this is a condition, which can cause compression of the nerve roots, the basis for radiculopathy.[87]

The ALJ's explanation fails to consider ARNP Washington's explanation of the basis for her opined limitation and fails to

---

[86] *Id.*

[87] *Foraminal Stenosis*, Cleveland Clinic. www.clevelandclinic.org. (last viewed April 11, 2025.)

consider the importance of relevant information. Additionally, the ALJ fails to explain why Plaintiff's lack of manipulative deficits, negative Phalen's and Tinel's signs and full grip strength had any bearing on her lumbar radiculopathy and symptoms related to her lower extremities.[88] The ALJ failed to consider ARNP Washington's more relevant findings, such as positive straight leg raising test, an inability to walk on her toes, and difficulty with tandem walking or hopping and instead focused on a lack of weakness and pain in her hands.[89]

---

[88] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

[89] AR 47, 662.

The ALJ's errors when evaluating ARNP Washington's opinion impacted the ALJ's "consistency" analysis as to the medical evidence.  As noted above, the ALJ failed to consider the consistency of ARNP Washington's examination findings and opinions with the findings of Dr. Wenger, the 2021 CT scan showing "prominent" degenerative changes in the spine, and the 2018 MRI indicating bilateral neuroforaminal narrowing.

The Court concludes that a remand is warranted for the ALJ to properly evaluate ARNP Washington's opinions with due consideration of both the supportability and consistency factors.

### 3.    Dr. Michell's Opinion

Because the Court has found that remand is warranted, it will address this issue briefly.

On October 12, 2021, Joel Michell, PhD, examined Plaintiff at the request of the Commissioner.[90]  Based on his examination, Dr. Mitchell diagnosed Plaintiff with depressive disorder, recurrent, moderate; and

---

[90] AR 651-658.

generalized anxiety disorder.[91] He opined that Plaintiff: is able to manage funds, would not have substantial difficulty performing simple and repetitive tasks, would not have substantial difficulty performing detailed and complex tasks, would not have substantial difficulty accepting instructions from supervisors, would not have substantial difficulty interacting with coworkers and the public, would not have substantial difficulty performing work activities on a consistent basis without special or additional instructions, would have substantial difficulty maintaining regular attendance and completing a typical workday or work week without interruptions from a psychiatric condition, and would not have substantial difficulty dealing with typical stressors typical in the workplace.[92]

The ALJ found Dr. Michell's opinion not persuasive and articulated the following reasoning:

> The undersigned does not find the opinion of Mr. Mitchell persuasive. While Mr. Mitchell had an opportunity to examine the claimant, he did not have an opportunity to review the updated record. Moreover, his opinion that the

---

[91] AR 656.

[92] AR 657-658.

claimant would have substantial difficulties due to mental symptoms not corroborated by the longitudinal record to include, for example, the ability of the claimant to interact appropriately with providers, who have described her as cooperative with normal behavior; her appropriate or otherwise unremarkable hygiene and grooming; her frequently normal mood and affect; her intact cognition on mental status examinations with intact memory and concentration; and the findings and observations of Mr. Mitchell, himself, during an October 2021 consultative examination during which while the claimant was sad with intermittent tearfulness, she was also noted to have "largely normal concentration, pace, and persistence with little redirection required" with formal mental status testing showing wholly intact cognition as evidenced by her intact memory; appropriate fund of knowledge; intact concentration with the capacity to complete Serial 7s; intact abstract thinking; and appropriate insight and judgment (see e.g. 4F4, 8; 6F7, 12; 7F; 8F; 10F16; 11F20; 12F3; 16F3; findings #4 and #5).[93]

Plaintiff argues that it is unclear whether the ALJ properly gave credit to Dr. Michell's experience and degree because she called him Mr. Mitchell rather than Dr. Michell.  The Commissioner argues that the ALJ identified Dr. Mitchell as Joel Mitchell, PhD, and therefore clearly understood his qualifications.

---

[93] AR 46.

The Court notes that the ALJ referred to Dr. Mitchell by the term Mr. not once but three times.  Moreover, when addressing the opinions of Leslie Postovoit, PhD, and Steven Haney, PhD, who hold the same degree as Dr. Mitchell, the ALJ repeatedly referred to then as Drs. Postovoit and Haney.[94]

It is unclear to the Court whether the ALJ correctly considered Dr. Michell's proper qualifications when evaluating his opinion.  To the extent that the Court has already found remand to be warranted, this issue will be addressed on remand.

**B.     Step Two:  Plaintiff established consequential error.**

Plaintiff alleges that the ALJ erred in failing to properly consider her diverticulitis.[95]  Because the Court has determined that remand is warranted, it will only briefly address this issue.

At the July 2023 hearing, Plaintiff testified that it was not yet known whether the February 2023 ostomy surgery performed to address her diverticulitis would be able to be reversed or whether she

---

[94] AR 45-46.

[95] ECF No. 11.

would be permanently required to wear an ostomy bag.[96] At the time of the hearing and issuance of the decision, a period of 12 months had not yet passed. To the extent that the passage of time will now allow the ALJ on remand to determine if the condition lasted the requisite 12 months under the statute to be considered as disabling, the ALJ is directed on remand to reevaluate all of Plaintiff's impairments.

**C.    Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting her subjective complaints.  Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports.  This issue is therefore moot.

**D.    Steps Four and Five:  Plaintiff established consequential error.**

Plaintiff argues the ALJ failed to properly include all his limitations into the RFC and the hypothetical presented to the vocational expert. This argument depends on her contentions that the

---

[96] AR 68-69.

ALJ erred in evaluating the medical opinions as described above. As explained above, Plaintiff met her burden in showing that the ALJ erred in analyzing the medical opinions.

## E.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[97] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[98]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any,

_____

[97] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[98] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

additional limitations are to be added to the RFC. As noted above, on remand the ALJ is to properly consider the medical opinions, Plaintiff's alleged impairments, and Plaintiff's symptom reports.

## IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—her evaluation of the medical opinions, Plaintiff's impairments, and Plaintiff's subjective complaints.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

1      IT IS SO ORDERED. The Clerk's Office is directed to file this

2   order and provide copies to all counsel.

3      DATED this 15th day of April 2025.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge